UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | : | Case No. 3:10-cv-422 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| WCI, INC., *et al.*, | : | |
| Defendants. | : | |

**DECISION AND ENTRY: (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 14); (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH REGARD TO COUNTS I AND II (DOC. 15); AND (3) DISMISSING COUNT III WITHOUT PREJUDICE**

This case is before the Court on the Motion for Partial Summary Judgment filed by Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") and the Motion for Summary Judgment filed by Defendants WCI, Inc. ("WCI") and Elbert Lee Hale ("Hale"). (Docs. 14, 15). The parties filed responses to the opposing motion (Docs. 17, 18) and elected not to file reply memoranda. The Motions are ripe for decision by the Court.

## I. FACTS

Plaintiff is a closed circuit distributor of sports and entertainment programming. (Doc. 14-1). Plaintiff possessed the exclusive commercial television distribution rights to broadcast was the television pay-per-view event UFC 91: Randy Couture verses Brock Lesnar, which included the main event as well as under-card bouts (hereinafter "the event"). (Doc. 14-1). The fights aired live beginning at 10:00 p.m. on November 15, 2008. (Docs. 15-1, 16, 20).

In an effort to protect its distribution rights, Plaintiff customarily hires "auditors and law enforcement personnel to detect and identify signal pirates" at commercial

establishments. (*Id.*) Relevant to this case, two auditors, Anthony Bentley and Roland Georgi, entered Cheeks,¹ a gentleman's club with live semi-nude dancing, in the early morning hours of November 16, 2008. (Doc. 14-1).

Georgi entered Cheeks at 12:18 a.m. on November 16, 2008,² and saw a "re-broadcast"³ of the event, namely, an under-card bout between Jorge Gurgel and Aaron Riley, being broadcast on two projectors. (*Id.*) Georgi's affidavit provides no information regarding the method in which Cheeks displayed the event on the projector screens. (*Id.*)

Bentley entered Cheeks around 1:35 a.m., approximately one hour after Georgi left. (*Id.*) Bentley testified during a deposition that, by the time he arrived at Cheeks, the event was "over with." (Doc. 15-1). At the entrance, Bentley still saw a sign advertising the event, showing a promotional picture of the event and stating "Free" and "Free Food." (*Id.*) At approximately 2:05 a.m., after finishing a beer and on his way out of Cheeks, Bentley saw the event, namely, the first-round of an under-card bout between Maia and Quarry, being "rebroadcast" on two projector screens in a small room where no patrons were watching. (Doc. 15-1). Despite looking for cable boxes or satellite receivers in an effort to determine how the event was being broadcast, Bentley saw no cable boxes or

---

¹ The Complaint alleges that WCI is a "corporation and the principal, alter ego, officer, director, shareholder, employee, agent, and/or other representative of CHEEKS, a business entity of an unknown nature." (Doc. 1). The Complaint further alleges that Hale "is an individual and the alter ego of CHEEKS, the exact nature of which is unknown, having its principal place of business at 906 Watertower Lane West Carrolton, Ohio 45449." (*Id.*) Aside from these allegations, all of which were denied by Defendants in the Answer (Doc. 9), the parties submitted no evidence regarding the actual relationship of Defendants to Cheeks.

² The Court notes that Georgi's affidavit actually states that he entered Cheeks at 12:18 a.m. on November 15, 2008, which is an apparent error. (Doc. 14-1). Defendant does not contest the assertion that Georgi entered Cheeks minutes after midnight on November 16, 2008.

³ The pay-per-view event started at 10:00 p.m. on November 15, 2008. (Doc. 15-1). Typically, the broadcast of the live event last a couple hours and usually ends by approximately 12:30 a.m. (*Id.*)

satellite receivers near the screens. (Docs. 14-1; 15-1).

Plaintiff's president, Joe Hand, Jr., testifies that, to the best of his knowledge, the event could not have mistakenly, innocently or accidently been televised at Cheeks. Joe Hand, Jr.'s affidavit sets forth a non-exhaustive list of "methods by which a signal pirate can unlawfully intercept and broadcast" pay-per-view events, including: (1) use of a blackbox, hotbox or pancake box installed on a cable line; (2) use of a smartcard, text card or programming card installed on a DSS satellite receiver line; (3) misrepresentation of a commercial establishment as a residence; (4) cable drop or splice from an adjacent residence to a commercial establishment; or (5) the purchase of other illegal encryption devises or illegal satellite authorization codes. (Doc. 14-1). Bentley, on the other hand, offered an other possibility, *i.e.*, a DVD bootleg recorded from the earlier live broadcast.

Based on the observations of Georgi and Bentley, Plaintiff filed a three count Complaint alleging: (I) a violation of 47 U.S.C. § 605; (II) a violation of 47 U.S.C. § 553; and (III) conversion. (Doc. 1). Plaintiff filed a Motion for Partial Summary Judgment seeking a judgment as to liability on its claims under 47 U.S.C. §§ 605 and 553. (Doc. 14). Plaintiff does not seek summary judgment on the issue of damages or on its claim for conversion. (*Id.*) Defendant also filed a Motion for Summary Judgment on all claims asserted by Plaintiff. (Doc. 15).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

-3-

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(e)(2)). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id.* (citing Fed. R. Civ. P. 56(e)(2)).

### III. ANALYSIS

#### A. Federal Claims Under 47 U.S.C. §§ 553 and 605

The first two counts of Plaintiff's Complaint allege violations of federal law, namely 47 U.S.C. § 553[4] and 47 U.S.C. § 605(a).[5] Under § 553(a), "[i]t is illegal . . . to

---

[4] 47 U.S.C. § 553(a)(1) provides that "'[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

[5] 47 U.S.C. § 605(a) provides, in pertinent part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

intercept or receive without authorization any communications service offered over a cable system." *Joe Hand Promotions, Inc. v. RPM Management Co., LLC*, No. 2:11-cv-377, 2011 WL 5389425, at *2 (S.D. Ohio Nov. 7, 2011). Section 605(a) "prohibits the unauthorized interception of radio communications." *Id.* at *1; *Joe Hand Promotions, Inc. v. Potopsky*, No. 1:10-cv-1474, 2011 WL 2648610 (N.D. Ohio Jul. 6, 2011) (citations omitted) (stating that "Section 605 prohibits the unauthorized interception of satellite communications"). Persons aggrieved by violations of § 553(a)(1) or § 605(a) "may bring a civil action in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. §§ 553(c)(1) and 605(e)(1).

"Despite their facial similarity, Sections 553 and 605(a) reach different conduct." *Cablevision of Michigan*, 27 F.3d 566, 1994 WL 245584, at *3 (6th Cir. 1994). Essentially, "Section 605(a) may be read as outlawing satellite signal piracy, while Section 553 bans only the theft of programming directly from a cable system." *Id.*; *see also J & J Productions, Inc. v. Schmalz*, 745 F.Supp.2d 844, 849 (S.D. Ohio 2010). For instance, where a program is broadcast "over a cable system, and not via a satellite signal . . . § 605(a) is inapplicable" and summary judgment denying claims brought under § 605(a) is appropriate. *Schmalz*, 745 F. Supp.2d at 850; *see also Kingvision Pay-Per-View, Ltd. v. Rocca*, 181 F.Supp.2d 29, 33 (D.N.H. Jan. 2, 2002). Conversely, where "Defendants intercepted and received . . . satellite signal without authorization[,]" § 553(a) is inapplicable. *Potopsky*, 2011 WL 2648610 at *3 (denying summary judgment in favor of plaintiff on a § 553(a) claim because defendant intercepted a satellite signal).

Here, Plaintiff maintains that it is entitled to summary judgment as a matter of law with regard to claims asserted pursuant to §§ 553(a) and 605(a) simply because two investigators saw a "rebroadcast" of the pay-per-view event in Cheeks and because

-5-

Defendants did not pay for the right to broadcast the event in the commercial establishment. Defendants, on the other hand, argue that Plaintiff fails to meet its burden of proof because there is no evidence regarding "the manner in which this event was intercepted and received in order to then be published in Cheeks." (Doc. 15). Defendants argue that the rebroadcast of the fight in Cheeks "could have been . . . via videotape obtained from the internet or some other source besides cable or satellite."[6] (*Id.*)

Before attempting to address the merits of the arguments set forth by the parties, the Court initially notes the lack of any evidence (via admission, documents, testimony or otherwise) establishing any relationship between Cheeks and either Defendant. The Complaint simply alleges that Hale "is an individual and the alter ego of CHEEKS, the exact nature of which is unknown[,]" and that WCI "is [a] corporation and the principal, alter ego, officer, director, shareholder, employee, agent, and/or other representative of CHEEKS, a business of an unknown nature." (Doc. 1). Defendant denied all such allegations in answering the Complaint. (Doc. 9). Neither party evidences nor even addresses the relationship of Defendants to Cheeks, if any, in moving for summary judgment.

With regard to the merits of the parties' arguments set forth in their Motions, a review of the scant evidence provided fails to show the manner in which the fights were replayed in Cheeks in the early morning hours of November 16, 2008. Courts have denied summary judgment in favor of aggrieved parties asserting claims under § 553(a) and/or § 605(a) where "there is no record evidence establishing how the [pay-per-view program] was received at [the commercial establishment]." *Kingvision Pay Per View,*

---

[6] Notably, Defendants provide no evidence demonstrating that the event was actually displayed in Cheeks via a recording.

*LTD v. Owens*, 982 F.Supp. 803 (D. Kan. 1997) (denying summary judgment and stating that "the court [could not] determine . . . which statutory provision of the Communications Act, if any, applies in the instant action"); *Joe Hand Promotions, Inc. v. Smith*, No. 2:09-cv-01047 JWS, 2010 WL 2292315 (D. Ariz. Jun. 7, 2010) (denying summary judgment in favor of plaintiff where "genuine issues of material fact as to the manner in which the Program was intercepted and exhibited" remained); *J & J Sports Productions, Inc. v. Resendiz*, No. 08 C 4121, 2009 WL 1953154 (N.D. Ill. Jul. 2, 2009).

Here, Plaintiff presents testimony from two investigators stating that they watched a "rebroadcast" of the event sometime after the live broadcast concluded. (Docs. 14-1, 15-1). Plaintiff submits no evidence that the fights were rebroadcast via satellite or cable communications immediately following the conclusion of the live event, and there is no evidence from which the Court could determine whether the program was rebroadcast in Cheeks via receipt or interception of either a satellite communication or cable communication. In other words, there is no evidence demonstrating which statute applies and which statute was violated. Therefore, in the view of the Court, Plaintiff has failed to establish Defendants' liability under either statute. Accordingly, Plaintiff's Motion for Partial Summary Judgment (Doc. 14) is **DENIED**.

Defendants move for summary judgment arguing that this lack of evidence requires a grant of summary judgment in their favor on Plaintiff's federal claims, *i.e.*, counts I and II. Where "plaintiff has failed to put forth any affirmative evidence concerning the defendants' use of a satellite transmission[,]" such "deficiency in the plaintiff's evidence entitles the defendants to judgment as a matter of law." *Joe Hand Promotions, Inc. v. Rennard Street Enterprises, Inc.*, No. 96-3593, 1998 WL 328316, at *4 (E.D. Pa. Jun. 19, 1998). Here, absent any affirmative evidence shown by Plaintiff

demonstrating the use of either a satellite or a cable transmission, Defendants' Motion for Summary Judgment (Doc. 15) is **GRANTED** with regard to Counts I and II.

## B. State Law Conversion Claim and Supplemental Jurisdiction

Having disposed of all of Plaintiff's federal causes of action, the only remaining claim asserts that Defendants converted the fight by intercepting the broadcast and showing it at Cheeks in violation of Ohio common law. In Ohio, "[c]onversion is a wrongful exercise of dominion over property in exclusion of the right of the owner or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 351 N.E.2d 454, 456 (Ohio 1976); *Disciplinary Counsel v. Squire*, --- N.E.2d ---, 2011 WL 5245593 (Ohio Nov. 3, 2011); *Allan Nott Enterprises, Inc. v. Nicholas Starr Auto, L.L.C.*, 110 Ohio St.3d 112, 851 N.E.2d 479 (Ohio 2006); *see also Morgan v. Del Global Technologies Corp.*, No. 3:05-cv-123, 2007 WL 3227068 (S.D. Ohio Oct. 29, 2007).

Originally, "only tangible chattels could be converted." *Zacchini*, 351 N.E.2d at 456-57. Conversion claims have been extended by Ohio courts to cover "intangible rights which are customarily merged in or identified with some document[,]" such as "drafts, bank passbooks, and deeds." *Id.* at 457.[7] One Ohio court recently concluded that an

---

[7] In setting forth only limited examples of intangible property likely subject to conversion claims, the Supreme Court of Ohio noted that:

> The distinguishing characteristic of conversion is the forced judicial sale of the chattel or right of which the owner has been wrongfully deprived. In the case of such intangible quasi-proprietary rights [such as one's countenance or image], a forced sale would be largely absurd, because of the doubtfulness of determining what has been 'taken.' Is it the right to perform the act, to view it, to present it on television, to license its filming, or some other right? Judicial ingenuity could perhaps award damages and find a res said to be sold. But to extend the ambit of conversion to rights such as those claimed by plaintiff, which are more appropriately considered under wholly distinct legal principles, is confusing, unnecessary, and improper.

*Zacchini*, 351 N.E.2d at 457.

account with an internet domain registrar and web hosting company, "its accompanying domain names and e-mail accounts" were all intangible property subject to conversion claims. *Eysoldt v. ProScan Imaging*, --- N.E.2d ---, 2011 WL 2021502 at *4 (Ohio App. May 18, 2011). Here, the parties do not address whether television programs broadcast over cable or satellite television amount to intangible property subject to conversion claims,[8] and as a result, neither party cites any Ohio state court decision[9] in that regard.

Given the apparently undecided issue of state law,[10] the Court first considers Defendant's contention that the Court should not exercise supplemental jurisdiction over the state claim in the absence of federal claims. In civil cases where district courts possess original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). District

---

[8] Further, the parties never addressed whether the unauthorized display of a pay-per-view event in a commercial establishment amounts to exercising dominion or control to the exclusion of Plaintiff's rights. *See DirectTV, Inc. v. Lockwood*, 311 F.Supp.2d 1147, 1149-51 (D. Kan. 2004) (concluding that satellite provider could not allege in good faith that intercepting a satellite signal deprived the provider "of its signal at any time" because "it is possible for Plaintiff, its customers, and unauthorized uses to use the signal simultaneously"); *see also DirectTV, Inc. v. Borich*, No. Civ.A. 1:03-2146, 2004 WL 2359414 (S.D. W.Va. Sept. 17, 2004) (finding a failure of proof regarding "defendant's dominion over the signal" despite defendant's unauthorized use). Also, the parties in this case never addressed whether the unauthorized display of a pay-per-view fight in a commercial establishment amounts to "withholding" Plaintiff's property.

[9] The Court has identified one decision from the United States District Court for the Northern District of Ohio where the court granted an *unopposed* motion for summary judgment on a conversion claim asserting the interception of a satellite signal. *DirectTV Inc. v. Disalvatore*, No. 5:02 cv 706, 2003 WL 24051575, at *6 (N.D. Ohio May 21, 2003).

[10] Other courts throughout the country have reached different conclusions on this issue. *Joe Hand Promotions, Inc. v. Lynch*, No. 11-C-4607, 2011 WL 6009615, at *3-4 (N.D. Ill. Nov. 30, 2011) (noting a split between judicial opinions within the same federal district court concerning "whether the interception of television programming can qualify as conversion" and dismissing a conversion claim on the grounds that "Illinois [state] courts have not yet extended the tort of conversion to intangible property like television programming"); *DirectTV, Inc. v. Hubbard*, No. Civ.A. 2:03CV261-P-D, 2005 WL 1994489 (N.D. Miss Aug. 17, 2005) (concluding that a conversion claim does not extend to the unlawful interception of satellite transmissions); *Joe Hand Promotions, Inc. v. Rajan*, No. 10-40029-TSH, 2011 WL 3295424, at *6 (D. Mass. Jul. 28, 2011) (noting that "conversion has been found where the subject was intangible property in a cable theft case" and concluding that the complaint stated a claim for conversion against a defaulting defendant).

courts may choose to not exercise supplemental jurisdiction over related state claims in certain instances, including where "the claim raises a novel or complex issue of State law" or where "the district court has dismissed all claims over which it has original jurisdiction[.]" *Id.*

"In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) (citations omitted). Where federal claims are resolved "before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id.* at 952 (citations omitted).

Here, in the interests of comity and in light of the disposition of all federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's conversion claim. Accordingly, Plaintiff's state law conversion claim is **DISMISSED WITHOUT PREJUDICE.**

## IV. CONCLUSION

Based on all of the foregoing, Plaintiff's Motion for Partial Summary Judgment (Doc. 14) is **DENIED**. Defendants' Motion for Summary Judgment (Doc. 15) is **GRANTED** with regard to Counts I and II of the Complaint. Count III of the Complaint is **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

Date: 12/22/11

Timothy S. Black
United States District Court